IMSE-SCHILLING SASH AND DOOR COMPANY, A CORPORATION, PAUL KERZEL AND CHARLES P. KOEHLER, DEFENDANTS IN ERROR, v. VIOLA DAWES KELLEMS, PATRICK J. SLATTERY AND CLARENCE J. HICKS, PLAINTIFFS IN ERROR.—179 S. W. (2d) 910.

St. Louis Court of Appeals. Opinion filed May 2, 1944.

Motion for rehearing of defendants in error overruled May 19, 1944; opinion filed.

Petition for writ of certiorari denied by Supreme Court July 3, 1944.

*Dubail & Judge* for plaintiffs in error.

962

*Otto O. Fickleissen* for Paul R. Kerzel and Charles P. Koehler, defendants in error.

BENNICK, C.—This is a proceeding by writ of error to review the record and proceedings of the Circuit Court of the City of St. Louis in an equitable mechanic's lien suit which was prosecuted in said court for the purpose of determining, establishing, and enforcing the various rights, interests, and liens of the respective lien claimants, owners, and other parties in interest in and against certain contiguous lots and the improvements thereon known as 2343-45 Madison Street in the City of St. Louis.

It appears from the decree that in September, 1927, the original owners of the property, Clarence J. Hicks and Pearl Hicks, his wife, executed a deed of trust upon the property in favor of one Viola Dawes, who later married and is now known as Viola Dawes Kellems. Patrick J. Slattery was named as trustee in the deed of trust, which was apparently given to secure a building loan. Subsequently the record title to the property was transferred to Viola Dawes, whereupon, according to the court's decree, the entire title became merged in her, and the deed of trust became a nullity.

The court further found that Clarence J. Hicks, Pearl Hicks, and Viola Dawes, as owners of the property, entered into a contract with Paul R. Kerzel as original contractor for the making of certain improvements upon the property. Thereafter, at Kerzel's special instance and request, labor and materials which entered into the improvements were furnished, respectively, by Imse-Schilling Sash and Door Company and Charles P. Koehler.

Within due time after their respective accounts had accrued, liens were filed by Kerzel, Koehler, and Imse-Schilling Sash and Door Company; and on April 16, 1931, prior to the bringing of the equitable suit involved in this proceeding, Koehler instituted an independent suit for the establishment and enforcement of his separate lien.

On June 13, 1931, approximately two months after the institution of Koehler's independent suit, and within ninety days after the filing of its lien, Imse-Schilling Sash and Door Company commenced an equitable mechanic's lien suit for the determination, adjudication, and enforcement of the rights of all interested parties in such single suit. Clarence J. Hicks, Pearl Hicks, Viola Dawes, Patrick J. Slattery, Paul R. Kerzel, and Charles P. Koehler, were all named as defendants in said suit; and personal service in said suit was eventually obtained upon all of such defendants except Pearl Hicks and Viola Dawes.

On July 21, 1931, which was within ninety days after the filing of his lien, and was two days before the service of summons upon him in the then pending Imse-Schilling Sash and Door Company suit, Kerzel likewise commenced an equitable mechanic's lien suit for the determination, adjudication, and enforcement of the same liens, rights, and interests as were involved in the Imse-Schilling Sash and Door

Company suit. Clarence J. Hicks, Pearl Hicks, Viola Dawes, Patrick J. Slattery, Charles P. Koehler, and Imse-Schilling Sash and Door Company were all named as defendants in Kerzel's suit; and personal service in said suit was obtained on all of such defendants except Pearl Hicks, as to whom an order of dismissal was subsequently entered in the final submission to the court.

Of the facts we have noted respecting the institution of the two equitable suits and the service obtained upon the several defendants therein, there are two circumstances to be kept particularly in mind for whatever their legal significance may be—the first, that while the Imse-Schilling Sash and Door Company suit was concededly pending at the time of the institution of Kerzel's suit, Kerzel had not been served with process as a defendant in the Imse-Schilling Sash and Door Company suit at the time of the commencement of his own suit; and the second, that Viola Dawes was only served in Kerzel's suit, and not in the Imse-Schilling Sash and Door Company suit, which was the first to be instituted in point of time.

It will be recalled that Koehler had instituted his independent mechanic's lien suit on April 16, 1931, long before the bringing of either of the equitable suits; and on July 21, 1931, the very day that Kerzel's suit was instituted, Koehler entered his appearance in such suit, and filed his answer and cross-bill therein for the adjudication and enforcement of his lien. It appears, incidentally, that he and Kerzel were represented by the same attorneys, which may explain why his cross bill was filed in Kerzel's suit rather than in the pending Imse-Schilling Sash and Door Company's suit, in which, as a matter of fact, he had been served with process as a party defendant five days before the entry of his appearance in Kerzel's suit.

On August 7, 1931, Kerzel filed a motion in the Imse-Schilling Sash and Door Company suit in which he asked that the two equitable suits be consolidated so that all the identical matters embraced in the two suits might be determined in one proceeding. On January 9, 1940, more than eight years later, said motion was taken up and sustained by the court and an order entered that the two suits be consolidated under the number previously given the Imse-Schilling Sash and Door Company suit.

On November 27, 1942, the court entered its decree in the consolidated cause, in which it recited that Imse-Schilling Sash and Door Company, Kerzel, and Koehler had all appeared in person and by counsel; that the suit had been dismissed as to Pearl Hicks; and that Clarence J. Hicks, Patrick J. Slattery, and Viola Dawes had made default. Each of the liens was sustained, all for an amount within the pecuniary jurisdiction of this court, and with a direction that the amounts due Koehler and Imse-Schilling Sash and Door Company be satisfied out of the judgment in favor of Kerzel, with any residue, after the satisfaction of all the liens, to be paid to Viola Dawes.

So matters stood until November 26, 1943, when this court, upon the application of Viola Dawes, Patrick J. Slattery, and Clarence J. Hicks, ordered a writ of error to issue upon such decree to the end that the record and proceedings in the cause might be reviewed and any error corrected.

The chief controversy between the parties goes to the question of whether Viola Dawes was propertly before the court as a party defendant in the case so as to be bound by the final decree establishing the several mechanic's liens against the property in which the court found that she had become vested with the entire estate upon the merger of her beneficial interest under the deed of trust with the legal title transferred to her by Clarence J. Hicks and Pearl Hicks, the former owners of the property. It is not denied that she was a necessary party in the case; nor is there any pretense that if she was not legally before the court, her interest is not affected by the adjudication of the liens.

It will be once again recalled that Viola Dawes was only served in Kerzel's suit, and not in the prior suit brought by Imse-Schilling Sash and Door Company, so that, in the final analysis, the question of whether she was legally before the court so as to be bound by its decree depends upon whether or not Kerzel's suit had legal *status* and effect. If so, then having been served with process in such suit, she was unquestionably before the court by virtue of the order of consolidation which was entered before the trial. The situation was not one where two separate and distinct causes of action were consolidated for the mere purpose of convenience or economy in their trial, in which event the order of consolidation would not have made the parties to the one suit parties to the other; but on the contrary, the purpose of the consolidation, and the undoubted consequence of it if Kerzel's suit had legal status and effect, was to combine and transform the two suits into but a single suit for the adjudication of the same issues between the same parties as were involved in each suit separately. However, if Kerzel's suit, because of the pendency of the Imse-Schilling Sash and Door Company suit, had no legal status and effect, then every step taken in connection with it was likewise a nullity, and the service upon Viola Dawes as a party defendant in Kerzel's suit could not have subjected her to the jurisdiction of the court.

The question is to be answered by recourse to the pertinent provisions of the equitable mechanic's lien statute, which currently appears as sections 3570-3577, Revised Statutes Missouri 1939 (Mo. R. S. A., secs. 3570-3577).

Section 3570 makes provision for the adjudication and enforcement of all liens, and the determination of the rights of all parties in interest, in a single equitable suit which may be brought by any lien claimant, owner, lessee, mortgagee, or holder of any other encumbrance

on the property; and if brought by any lien claimant, must be commenced within the period of ninety days after the filing of his lien.

Section 3571 provides that all persons claiming any lien or encumbrance upon the property, and all persons, including owners and lessees, having any rights in or against it, all as may be disclosed by the proper public records, shall be made parties to the suit. Any lien claimant or other person having rights in the property whose rights are not disclosed by the proper record at the time of the bringing of the action, shall be bound by the proceedings, orders, and judgment therein, but shall be entitled, upon application to the court, to be made a party to the suit at any time before final disposition of the proceeds of the property, and shall be entitled, according to his respective rights, to participate in the proceeds of the sale of the property as the same may be thereafter received or may then remain under the jurisdiction of the court. If at the commencement of the suit any person whose rights are disclosed by the record is omitted as a party, he may thereafter be made a party to the suit, either upon his own application, or upon the application of any other party, or by the court of its own motion.

Section 3572 provides that such equitable suit shall not apply to instances in which there is only one mechanic's lien claimed against the property, but that in any such instance the court shall determine the respective priorities as between such mechanic's lien and any other lien or encumbrance, and enforce the same accordingly.

Section 3573 provides that when such an equitable suit is brought, all other suits that may have been brought on any mechanic's lien claim or demand shall be stayed and not further prosecuted, and the parties in any such other suit shall be made parties to the equitable suit. "After the institution of such equitable action no separate suit shall be brought upon any mechanic's lien or claim against said property, or any of it, but the rights of all persons shall be adjusted, adjudicated and enforced in such equitable suit."

Section 3574 provides, among other things, that the commencement of such an equitable suit "shall be the filing of the petition therein."

Section 3576 provides that after such equitable suit is commenced, the same shall be "exclusive" of other remedies for the enforcement of mechanic's liens, but that until such suit is brought, the other remedies provided for shall remain and exist.

Section 3577, the limitation statute, provides that any answer, or other pleadings, or motion, "or entry of appearance followed by pleading in due course", filed or made in any such equitable suit by any mechanic's lien claimant within ninety days after the filing of his lien, or filed or made at the time required by law on a summons issued in such equitable suit, and during its pendency, before or within the ninety-day period within which a mechanic's lien suit must be

commenced, shall be deemed the commencement of a suit by such mechanic's lien claimant.

In determining the question of whether Kerzel's suit had legal status and effect, it is to be kept in mind that the Imse-Schilling Sash and Door Company suit was an equitable suit of the character provided for by the above sections of the statutes; that it was commenced prior to the institution of Kerzel's suit, and was pending when Kerzel's suit was filed; and that there had been no request by Imse-Schilling Sash and Door Company, at the time of the filing of its petition, that the issuance of summons be withheld.

In cases arising under the statute and presenting the question, in one way or another, of the legal *status* and effect of a mechanic's lien suit, either at law or in equity, which is brought subsequent to the institution of a prior equitable suit involving the same property, the decisions hold that when the equitable suit is filed, it becomes exclusive of all other remedies; that any other or separate suit may not be brought; and that if such a subsequent suit is attempted to be brought notwithstanding the prohibition of the statute, it is of no force and effect, and may not be invested with legal force and effect even though the defendants named in the suit may actually answer the petition. [Badger Lumber & Coal Co. v. Robertson, 222 Mo. App. 211, 297 S. W. 99; Richards Brick Co. v. Wright, 231 Mo. App. 946, 82 S. W. (2d) 274; Mansfield Lumber Co. v. Johnson (Mo. App.), 91 S. W. (2d) 239.]

Relying upon this line of cases, and particularly upon Richards Brick Co. v. Wright, a decision of this court, plaintiffs in error take the position we have already suggested—that because of the pendency of the Imse-Schilling Sash and Door Company suit, Kerzel's suit was without legal force and effect, with the necessary consequence that the service upon Viola Dawes as a party defendant in that suit (service having been had upon her only in that suit) amounted to nothing, and was insufficient to subject her to the jurisdiction of the court so as to bind her by the decree which was rendered by the court after the purported consolidation of Kerzel's suit with the Imse-Schilling Sash and Door Company suit.

Indeed, defendants in error themselves recognize the fact that once an equitable suit is instituted, the rights of all lien claimants and other parties in interest must be adjudicated in such single suit; but they insist that under the peculiar circumstances of this case, the bringing of Kerzel's suit was not prohibited, notwithstanding the pendency of the Imse-Schilling Sash and Door Company suit, for the reason that Kerzel had not as yet been served with process as a party defendant in the prior suit at the time his own petition was filed. In other words, they argue that the purpose of summons upon Kerzel in the Imse-Schilling Sash and Door Company suit was to apprise him of its institution so that he might thereafter plead therein

by cross-petition for the enforcement of his lien; and that until such time as he was served with notice of the pendency of that suit, he was entitled to bring his own suit before the expiration of the period of limitation, and thereafter file his motion in the prior suit to have the two consolidated.

While the present proceeding is the first to come before an appellate court of this State in which this precise question is essential to the determination of the issues presented, the possibility of such a situation was alluded to by the Supreme Court in Chance v. Franke, 348 Mo. 402, 153 S. W. (2d) 378.

Having strict regard for the language of the act and the interpretation which the courts have put upon it, we cannot escape the conclusion that the prohibition against subsequent suits is nowhere qualified by the necessity that service shall have been had upon a particular lien claimant in order to bar him from the institution of another or separate suit. On the contrary, it is the mere institution of an equitable suit—the filing of the petition therein with the intention that summons shall issue in the regular course—which precludes the subsequent bringing of a separate suit; and it has been expressly decided that the words "separate suit", as the same are used in Section 3573, are not limited in their meaning to a suit at law, but include as well a suit in equity. [Badger Lumber & Coal Co. v. Robertson, *supra*.]

In other words, as has been aptly said by the Supreme Court in Lee & Boutell Co. v. C. A. Brockett Cement Co., 341 Mo. 95, 106 S. W. (2d) 451, "such equitable action is made the 'exclusive' remedy . . . and subsequent suits for the establishment of any mechanics' liens against the property are expressly prohibited". Consequently, any lien claimant, who desires the enforcement of his lien, must bear the burden of taking the necessary steps to avail himself of the exclusive remedy which is provided, which means that before bringing his own suit, he must investigate, as he may readily do, whether an equitable suit is pending in which his lien may be adjudicated. Nor, even if such a suit is pending, may he in all events await the issuance of summons in such suit, but instead, if summons is not issued for him within the period of ninety days in which he must commence his action, then under Section 3577 his remedy is to enter his appearance and plead in the equitable suit before the expiration of his ninety days, in which event his action is commenced in time. [Richards Brick Co. v. Wright, *supra*.]

The requirement that the single equitable suit shall constitute the exclusive remedy is likewise emphasized in Manchester Iron Works v. E. L. Wagner Construction Co., 341 Mo. 389, 107 S. W. (2d) 89. The consolidation allowed in that case was only as between five separate equitable suits, all brought contemporaneously by the same plaintiff, which the plaintiff could have brought in the first instance as a

single equitable suit in five counts. All lien claimants had intervened in the first of plaintiff's suits, although in some cases the liens were only sought on property involved in other suits; and the court merely held that when the five separate suits were consolidated into a single equitable suit, the parties who had intervened in the one of the suits became parties to the consolidated suit for the adjudication and enforcement of their liens.

In the case at bar, the Imse-Schilling Sash and Door Company suit was the exclusive remedy for the determination and enforcement of the various rights, interests, and liens of the respective parties; and with Kerzel's suit "of no force and effect" because of the pendency of the prior suit, Viola Dawes, who was only served as a party to Kerzel's suit, was not subjected to the jurisdiction of the court by service of summons issued upon such "dead petition." [Mansfield Lumber Co. v. Johnson, *supra.*]

The only question raised by the petition of plaintiffs in error has to do with the validity of the decree in so far as it purports to adjudge and enforce the several liens against the property. For reasons already pointed out, the decree is erroneous in such respect.

The court has heretofore overruled the motion of defendants in error that the writ of error be dismissed because of the alleged insufficiency of the abstract and brief which have been filed by plaintiffs in error.

It follows that the judgment rendered by the circuit court should be reversed in so far as it adjudges and provides for the enforcement of the several mechanic's liens against the property. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed in so far as it adjudges and provides for the enforcement of the several mechanic's liens against the property. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.

### ON MOTION FOR REHEARING.

BENNICK, C.—Two of the defendants in error, Paul Kerzel and Charles P. Koehler, have filed a motion for rehearing in which they earnestly question the correctness of our decision reversing the judgment of the circuit court in so far as it adjudged and provided for the enforcement of the several mechanic's liens against the property.

Their chief contention seems to be that in holding that their exclusive remedy was by cross-petition in the Imse-Schilling Sash and Door Company suit, and that Kerzel's subsequent suit was of no force and effect notwithstanding he had not been served with process in the Imse-Schilling Sash and Door Company suit at the time of the filing of his own petition, we have denied them due process of law as guar-

anteed by Article 2, Section 30, of the Constitution of Missouri, and have ruled contrary to the provisions of Sections 876-880, Revised Statutes Missouri 1939 (Mo. R. S. A., secs. 876-880), which have to do with the commencement of actions and the service of process upon defendants.

There is of course no question of our appellate jurisdiction, since the complaint goes only to our interpretation of the equitable mechanic's lien law, the constitutionality of which has not been challenged at any stage of the proceeding.

In considering the question of whether our decision constitutes a denial of due process, defendants in error mistakenly approach the question from the standpoint of the ordinary defendant who is to be charged with the result of the litigation brought against him by his adversary, and who must obviously be given notice and an opportunity to be heard in his defense before his rights may be affected by any judgment rendered against him. While it is true that as lien holders of record, Kerzel and Koehler were named as defendants in the Imse-Schilling Sash and Door Company suit, the matter they are complaining of is not one of a defense to such plaintiff's suit, but of the sufficiency of the remedy provided for the enforcement of their own liens, in which respect they too occupied the *status* of plaintiffs in the sense that they were asking affirmative relief for themselves. Whether they have been accorded due process must therefore be considered from the standpoint of the rights of one who seeks to maintain his own cause of action, as to whom it is only essential that he be afforded an adequate and appropriate remedy by a regular and orderly mode of procedure which will operate equally and uniformly upon all persons having claims within the class of cases to which his own belongs.

As we have interpreted the equitable mechanic's lien law, it afforded Kerzel and Koehler the identical remedy made available to each and every other lien claimant after the institution of an equitable suit, which was by cross-petition in such suit within the time otherwise fixed for the commencement of each one's individual action. If the Legislature had thought it advisable, it might have provided that until each lien claimant was served with process in the suit first filed, he might institute his own action, and later, when service was obtained upon him in the prior suit, take steps to have the two consolidated. However, the Legislature, in its discretion, saw fit to prescribe a different mode of procedure, and instead provided that after the institution of an equitable suit by the filing of the petition therein, no other or separate suit should be brought upon any mechanic's lien or claim against the property or any of it, but the rights of all persons should be adjusted, adjudicated, and enforced in such equitable suit, which was made the exclusive remedy. [Secs. 3573, 3574, 3576, *supra.*] Nor did the Legislature stop with the mere prohibition

against the bringing of another or separate suit, but in recognition of the fact that summons might not be issued for a particular lien claimant within the period of ninety days in which his action was required to be commenced, it made express provision by section 3577 for his timely entry of appearance followed by pleading in due course, so as to avoid the bar of limitation.

As a matter of fact, the instant case furnishes an apt illustration of the distinction to be drawn between those who seek to enforce their rights, and those who are to be charged with the result of the litigation, as regards the basic conditions of due process. The Imse-Schilling Sash and Door Company suit was the exclusive remedy to be availed of by all the lien claimants for the enforcement of their liens, but the liens were not to be enforced except upon service duly obtained upon Viola Dawes, the owner of the property. Notwithstanding the fact that service was not obtained upon her in such suit, the liens were nevertheless adjudged against her property; and it is therefore idle to say that her substantial rights were not affected by the judgment.

It follows that the motion for rehearing should be overruled; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The motion for rehearing is, accordingly, overruled. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.